UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRON WORKERS' LOCAL NO. 25
PENSION AND BENEFIT FUNDS,

           Plaintiffs,         No. 07-CV-10882-DT

vs.         Hon. Gerald E. Rosen

STEEL ENTERPRISES, INC.;
STRUCTURAL STEEL CONSULTANTS,
INC.; DAN MCGUIRE d/b/a/ STRUCTURAL
STEEL CONSULTING, INC.; and JOHN
MCGUIRE AND DAN MCGUIRE, individually,

           Defendants.
_____/

OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON
COUNTS I, II, AND IV OF PLAINTIFFS'
FIRST AMENDED COMPLAINT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       October 30, 2009      

PRESENT: Honorable Gerald E. Rosen
                Chief Judge, United States District Court

I. INTRODUCTION

This ERISA contribution action is presently before the Court on a Motion for Summary Judgment filed by Iron Workers' Local No.25 Pension and Benefit Funds. Defendants have responded to Plaintiffs' motion and Plaintiffs have replied. Having reviewed and considered the parties' briefs and supporting evidence, the Court has

1

determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Defendant Steel Enterprises, Inc., is a steel erection company with its principal offices in Brighton, Michigan. The Plaintiff Funds are ERISA pension and fringe benefit funds established pursuant to a Collective Bargaining Agreement entered into between Local 25 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO and certain Employers and Employer Associations[1] whose members employ members of the Union. Steel Enterprises was a signatory to this Collective Bargaining Agreement. Plaintiffs originally filed this action on February 28, 2007 against Steel Enterprises and its owners/operators, John and Dan McGuire, seeking to recover from these Defendants unpaid employee benefit contributions due and owing to the Funds on behalf of each of its employees doing work covered by the Collective Bargaining Agreement. In their Complaint, Plaintiffs also alleged that Defendants Dan and John McGuire are ERISA fiduciaries and, as such, are personally liable for the unpaid fringe benefit contributions, pursuant to 29 U.S.C. § 1109.

During the course of discovery in this matter, Plaintiffs became aware that Dan McGuire was operating two more related businesses -- Structural Steel Consulting, Inc.

---

[1] These employer associations are the Great Lakes Fabricators and Erectors Association, the Associated General Contractors of America, Greater Detroit Chapter, Inc., and the Michigan Conveyor Manufacturers Association, Inc.

2

(an unincorporated entity)[2] and Structural Steel Consultants, Inc., a Michigan corporation, -- and that these entities have been doing steel work covered by the Iron Workers' Collective Bargaining Agreement. Plaintiffs further discovered evidence suggesting that these two companies are merely alter egos of Defendant Steel Enterprises, and that Dan McGuire shifted the work assignments from Steel Enterprises to these other companies so as to enable him to choose when and when not to abide by the terms of the CBA. Under this alter ego theory, Plaintiffs subsequently moved for leave to file an Amended Complaint to add Structural Steel Consulting and Structural Steel Consultants, Inc. as party-defendants in this action, and on September 30, 2008, the Court granted Plaintiffs' motion. Plaintiffs then filed their First Amended Complaint on October 28, 2008.

After the close of an additional period of discovery, Plaintiffs filed the instant Motion for Summary Judgment. In this Motion, Plaintiffs seek entry of judgment in their favor on three of the four counts in their Amended Complaint -- Count I (breach of contract against Steel Enterprises), Count II (breach of fiduciary duties of John McGuire and Dan McGuire) and Count IV (liability of Structural Steel Consulting and Structural Steel Consultants as alter egos of Steel Enterprises).[3]

---

[2] Notwithstanding the "inc." designation in the name of this company, Structural Steel Consulting is not an incorporated business; it is d/b/a of Defendant Dan McGuire. Therefore, when referring to this company the Court will refer to it only as "Structural Steel Consulting."

[3] Count III of the First Amended Complaint is a separate claim against Defendant Steel Enterprises for breach of a Payment Agreement entered into with the Plaintiff Funds on April 7, 2006 to pay off amounts due and owing pursuant to a previous delinquency. Summary judgment is not sought on this Count.

After briefing was completed on Plaintiffs' Motion for Summary Judgment, on May 29, 2009, Defendant Dan McGuire filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan. *See* Bankruptcy Case No. 09-56978. Pursuant to Section 362 of the Bankruptcy Code, the bankruptcy filing stayed all actions or claims against Dan McGuire that arose before the filing of his bankruptcy petition, including Plaintiffs' claims against him in this lawsuit. Plaintiffs' case against Defendant Dan McGuire was accordingly administratively terminated. *See* Order for Administrative Closing [Dkt. # 34].[4] Therefore, at this time, only Plaintiffs' claims against Defendants Steel Enterprises, Inc., Structural Steel Consultants, Inc., and individual Defendant John McGuire remain. This Opinion, therefore, will address Plaintiffs' request for summary judgment against these Defendants, only.

### III. DISCUSSION

#### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, the discovery and disclosure

---

[4] The case having been closed as to Dan McGuire, the Court also views this case closed as to Structural Steel Consulting, the unincorporated company under which Dan McGuire did business. An individual "may do business under a fictitious name if [he] chooses, but doing business under another name does not create an entity distinct from the person operating the business." *United States v. Matusoff Rental Co.*, 494 F. Supp. 740, 742 n.2 (S.D. Ohio 2007) (citations omitted). *See also Woodall v. Underwriters at Lloyds, London*, 2007 WL 1231688 at *2 (E.D. Tenn. 2007) (quoting *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb.1977) ("Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations. . . ."); *S. Ins. Co. v. Consumer Ins. Agency, Inc.*, 442 F. Supp. 30, 31-32 (E.D. La.1977) (same).

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Three Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- delineate the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[5] According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order

---

[5]"[T]aken together these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials. . . ." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure 3d, § 2727.

to defeat a properly supported motion for summary judgment."

\* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

\* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent  must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996).  *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  The Court will apply these standards in deciding Plaintiffs' Motion for Summary Judgment in this case.

B.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR BREACH OF CONTRACT CLAIM AGAINST STEEL ENTERPRISES

There is no dispute that Steel Enterprises is a signatory to the Local 25 Collective Bargaining Agreement.  *See* CBA signature page, signed by John McGuire on behalf of Steel Enterprises, Inc., Plaintiffs' Ex. A.  The Collective Bargaining Agreement requires that the signatory employers make benefit contributions to the Plaintiff Funds for each hour worked by their employees performing work covered by the Agreement.  *See* CBA., Plaintiffs' Ex. B., pp. 21-26.  The CBA also provides that the Trustees of the various fringe benefit funds are permitted to audit all companies to ensure that all contributions are paid appropriately.  *Id.* at 25.  The CBA further provides that if contributions are not timely paid, the employers are liable, not only for the amounts not paid, but also for certain liquidated damages.  *Id.* at 24.  Additionally, if an audit indicates a due and owing

balance in unpaid contributions, certain audit costs are also assessed.  *Id.* at 25.

An audit of Steel Enterprises was conducted in this matter covering the period of January 2006 through March 2007.  The audit was completed on July 12, 2007 and indicated that Steel Enterprises owed for unpaid contributions in the amount of $16,472.00.  *See* Plaintiffs' Ex.C; *see also* Affidavit of Auditor Robert Reeves, Ex. D.  Further, the audit indicated due and owing liquidated damages resulting from the audit in the amount of $1,134.93 and liquidated damages from prior late payments in the amount of $3,085.71.  *Id.*

Defendants do not dispute that Steel Enterprises owes for unpaid fringe benefit contributions and liquidated damages.  Although they claim that the audit figures are inaccurate, they fail to produce documentation to support these allegations.  Conclusory statements of the audit being inaccurate fail to meet the burden of establishing an issue of material fact to withstand Plaintiffs' properly supported summary judgment.

Therefore, Plaintiffs' Motion for Summary Judgment will be granted on Count I of the Amended Complaint.

C.   DEFENDANT JOHN McGUIRE IS LIABLE FOR BREACH OF HIS ERISA FIDUCIARY DUTIES

Under ERISA, an employer is a fiduciary with respect to a welfare benefit fund the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). As to what constitutes plan assets, the Department of Labor regulations and federal case law establish that unpaid fringe benefit contributions are vested plan assets when due.

29 C.F.R. § 2510.3-102(a) provides:

**Definition of "plan assets" – participant contributions.** (a) General rule. For purposes of [ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contributions to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

Courts have also held that when an employer withholds money from an employee's paycheck for deposit into ERISA benefit funds, the employer is a fiduciary with respect to this money. *See e.g.*, *United States v. Grizzle*, 933 F.2d 943, 946-48 (11th Cir. 1991), *cert. denied*, 502 U.S. 897 (1991) (money withheld for deposit into vacation fund was a plan asset). In this district, courts have repeatedly held that contributions are plan assets as soon as they are due and owing. *See, e.g., Plumbers Local 98 Def. Ben. Pension Fund v. M & P Master Plumbers of Michigan*, 608 F. Supp. 2d 873, 877-78 (E.D. Mich. 2009);*Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment, LLC*, 353 F. Supp. 2d 851, 854 (E. D .Mich.2004); *cf. Trustees of Mich. Regional Council of Carpenters Employee*

8

*Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 371 (E. D. Mich. 2005); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2nd Cir.1997) (money withheld from employees' paychecks for deposit into pension fund was a plan asset). Furthermore, a fiduciary "must discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

> 29 U.S.C. § 1109(a) imposes personal liability on fiduciaries as follows:
>
> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

*Plumbers Local 98 Def. Ben. Pension Fund v. M & P Master Plumbers* is illustrative. That case, like the instant action, involved a multi-employer collective bargaining agreement with a labor union to which M & P Master Plumbers was a signatory. Matthew Pankin testified in his deposition that, at all relevant times, he was the sole shareholder, officer and director of M & P. He also admitted that he had the final say in all decisions regarding M & P, including whether fringe benefit contributions were to be paid. From 2003 to 2006, M & P hired non-union workers to do work covered by the CBA and did not make fringe benefit contributions to the Plumbers pension and benefit fund as required by the agreement. The court held that from the moment Pankin knowingly failed to make required contributions to the Funds for these workers, he exercised control respecting disposition of plan assets, held those funds as a fiduciary, and under 29 U.S.C. § 1104(a)(1), was required to discharge

9

his duty "solely in the interest of the participants and beneficiaries of the Funds." Because he failed to do so, the court found Pankin to be personally liable for the unpaid contributions due and owing to the plaintiff fund. *See also United States v. Panepinto*, 818 F. Supp. 48, 52 (E.D.N.Y.1993) (holding that defendants' failure to make required contributions constituted exercise of control over the disposition of employee welfare benefit plan assets under ERISA).

Likewise in the present case, Defendant John McGuire exercised discretionary control over the benefit plans' assets, and, therefore, was a fiduciary.

Defendants do not dispute John McGuire's control over the plan assets and, in fact, admit that John McGuire makes the decisions for the payment of employee contributions to the Plaintiff Funds. *See* Defendants' Response Brief, pp. 1-2; *see also* John McGuire's Answer to Complaint; John McGuire Dep., pp.27-28; Dan McGuire Dep., p. 22, 69-70.[6] Defendants further do not dispute that payments to the Plaintiff Funds have not been made on behalf of all employees performing work covered under the CBA. However, relying on *Scarborough v. Perez*, 870 F.2d 1079 (6th Cir. 1989), they argue that the only manner in which to hold an individual defendant personally liable is to pierce the

---

[6] In their Response Brief, Defendants only contest the discretionary authority of Dan McGuire. However, as indicated above, as a result of his bankruptcy, Plaintiffs may not pursue claims against him in this lawsuit. Therefore, it is unnecessary for the Court to address Plaintiffs' argument that Dan McGuire is estopped from relitigating his fiduciary status by virtue of a previous judgment in a related case *Operating Engineers Funds, et al. v. Steel Enterprises, et al.*, 06-10275 (Taylor, J.), and Judge Taylor's ruling in that case that Dan McGuire was a fiduciary with respect to contributions to pension and benefit funds on behalf of Steel Enterprises' employees.

corporate veil.

Defendants' reliance on *Scarborough* is misplaced. That case dealt with piercing the corporate veil to find an individual liable for breach of contract based on his being an "employer" under ERISA. The case had nothing to do with an individual's breach of his fiduciary duties with respect to vested plan assets and unpaid employee benefit contributions.

Defendants having admitted that John McGuire made all decisions with respect to Steel Enterprises' payment of contributions to the Plaintiff Funds, and payments not having been made to the Funds on behalf of all Steel Enterprises' employees doing work covered by the CBA, the Court finds that Defendant John McGuire is personally liable for breaching his fiduciary duties with respect to the unpaid employee benefit contributions and vested plan assets.

C.  STRUCTURAL STEEL CONSULTANTS, INC. IS AN ALTER EGO OF STEEL ENTERPRISES

Plaintiffs also claim that Defendants Steel Enterprises, Steel Consulting and Steel Consultants are alter egos of each other and are, therefore, all bound by the Local 25 Collective Bargaining Agreement signed onto by Steel Enterprises.

The alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in cases where the new employer is "merely a disguised continuance of the old employer." *See Wilson v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,*

*AFL-CIO*, 83 F.3d 747, 759 (6th Cir. 1996); *N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.,* 910 F.2d 331, 336 (6th Cir. 1990) (quoting *Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106 (1942)). Once the alter ego status has been determined, the Collective Bargaining Agreement is read to bind the non-signatory alter ego. *Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307 (1st Cir. 1998).The doctrine was meant to "prevent employers from evading obligations" by merely "changing their corporate form." *N.L.R.B. v. Allcoast Transfer, Inc.*, 952 F.2d 576, 579 (6th Cir. 1986). The alter ego doctrine also is applied in "double-breasted" situations where "two or more coexisting employers perform[] the same work [but] are in fact one business, separated only in form." *Wilson*, 83 F.3d at 759.

The test for determining whether two companies are merely alter egos of one another is whether the companies have "substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *Nelson Electric v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981). Additionally, Sixth Circuit cases such as *Trustees of the Resilient Floor Decorators Insurance Fund v. A & M Installations, Inc.*, 395 F.3d 244, 248 (6th Cir. 2005), hold that in order to apply the alter ego doctrine, an "intent to evade" the preexisting contractual obligations through the formation of the second company must be detected. This alter ego doctrine, for example, was applied by the Sixth Circuit in *N.L.R.B. v. Allcoast*, 780 F.2d 576, 582 (6th Cir. 1986), where the Court detected substantially identical management between the suggested alter egos because one man managed all of the companies. The business purpose and operations of

12

the two companies were practically identical because both companies performed the same moving and storage operations. *Id.* The court also found the equipment to be substantially identical because even though the moving trucks were not used interchangeably, the second company leased the original trucks from first company. *Id.* Furthermore, the same truck drivers worked for both companies. *Id.* at 583. Balancing these factors led to the conclusion of alter ego status, so the collective bargaining obligations of the signatory company were enforced on the alter ego. *Id.*

Defendants in this case make no argument whatsoever disputing Plaintiffs' contention that Structural Steel Consultants is an alter ego of Steel Enterprises. Plaintiffs contention is supported by substantial evidence.

As for substantially identical management, supervision and ownership, it is first undisputed that Dan McGuire, the General Manager of Steel Enterprises and owner of the now defunct McGuire Steel, the predecessor and alter ego of Steel Enterprises,[7] formed Structural Steel Consulting which initially operated as a sole proprietorship, and its successor corporation, Structural Steel Consultants. Although Dan McGuire is not the listed owner of Steel Enterprises, the Sixth Circuit has held that a finding of common ownership is not a threshold factor for determining alter ego status. *Wilson v. Int'l Bortherhood of Teamsters*, 83 F. 3d 747, 759 (6th Cir. 1996).

Additionally, Structural Steel performed the same work as Steel Enterprises, i.e.,

---

[7] *See Operating Engineers Local 324 Pension Fund v. Steel Enterprises, et al*, E.D. Mich. No. 05-10275 (Taylor, J.), 5/21/07 Summary Judgment Hearing Tr., Plaintiffs' Ex. G, and Judgment, Ex. H.

steel fabrication, furnishing and erecting. *See* Dan McGuire's 11/12/07 Dep., pp. 6. Dan McGuire admitted that he would decide which company would perform work on client contracts; there was no documentation of contracts or subcontracts between Structural Steel Consulting and Steel Enterprises. *Id.* p. 22. Dan McGuire further testified that he simply puts money into Steel Enterprises to pay payroll, fringes, and expenses for Structural Steel employees. *Id.* This is evidence of "pervasive intermingling of funds and operations necessary to support a finding that the [companies] are alter egos." *Resilient Floors*, 395 F.3d at 249. Beyond this, Structural Steel Consulting shares use of a substantial amount of equipment with Steel Enterprises. Dan McGuire 11/12/07 Dep. pp. 6-7.

As for the intent to evade, in *NLRB v. Allcoast, supra,* the Sixth Circuit stated that "when the circumstances so strongly support a finding of alter ego status," an inference that "the employer intended to evade union obligations" can be drawn. 780 F.2d at 583. Considering that Dan and John McGuire already have a judgment against them for the alter ego status of Steel Enterprises and McGuire Steel, there is little doubt that this consistent pattern of behavior demonstrates an intent to avoid their obligations under the Local 25 collective bargaining agreement.

In sum, considering the evidence of a pervasive intermingling of funds and operations the Court finds that Steel Enterprises and Structural Steel Consultants are alter egos of one another. The Court, accordingly, concludes that Structural Steel Consultants is bound by the Local 25 collective bargaining agreement to which Steel Enterprises was

14

a signatory.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED. Accordingly,

IT IS FURTHER ORDERED that Defendants Steel Enterprises, John McGuire and Steel Consultants are liable to Plaintiffs for the amount of $20,692.64 for Steel Enterprises' unpaid employee benefit contributions and liquidated damages through March 2007.

IT IS FURTHER ORDERED that an updated audit be completed of Steel Enterprises and Structural Steel Consultants for all time periods through the present to determine any other due and owing contributions.

IT IS FURTHER ORDERED that once the updated audit is completed and this case completed,[8] a Judgment will be entered which will include any additional amounts determined to be due pursuant to the audit and the mandates of 29 U.S.C. § 1132(g)(2), including interest, penalties, costs and attorney fees as required and upon further submission to the Court.

---

[8] The granting of Plaintiffs' Motion for Summary Judgment does not complete this case as there remains for resolution Plaintiffs' claim in Count III of the Amended Complaint for Steel Enterprises' default on a previous Payment Agreement entered into with Local 25 on April 7, 2006 owing $39,101.59.

                                        s/Gerald E. Rosen  
                                        Chief Judge, United States District Court

Dated: October 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2009, by electronic and/or ordinary mail.

                                        s/Ruth Brissaud  
                                        Case Manager